

Robert A. Krause
krause@spencelawyers.com
Elizabeth A. Richards
richards@spencelawyers.com
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290
(307) 733-5248 Fax

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF WYOMING

| | |
|---|---|
| GABRIELLE E. MILONIS, as guardian of Andrew J. Milonis, individually; GABRIELLE E. MILONIS, wife; and GABRIELLE E. MILONIS as the parent of T.M., A.M. and P.M, the minor children of Gabrielle and Andrew Milonis.<br><br>Plaintiff,<br><br>v.<br><br>LAMPSON INTERNATIONAL, LLC; EARTH WORK SOLUTIONS (WY); and THUNDER BASIN COAL COMPANY, LLC,<br><br>Defendants. | Civil No. **1 1 CV 1 9 9**<br><br>COMPLAINT & JURY DEMAND |

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, by and through her attorneys, Robert A. Krause and Elizabeth A. Richards of the Spence Law Firm, LLC, pleads and alleges her cause of action against the Defendants as follows:

## PARTIES

1. Plaintiff Gabrielle E. Milonis is a resident of the State of Colorado who is a citizen of Colorado for the purpose of determining diversity.

2. Gabrielle E. Milonis is the guardian of Andrew J. Milonis, who sustained serious injuries when a crane collapsed at the Black Thunder Mine in Wyoming. The Douglas County District Court, Eighteenth Judicial District, for the State of Colorado entered an Order appointing Gabrielle E. Milonis guardian of Andrew J. Milonis on March 2, 2011.

3. Andrew J. Milonis is a resident of Colorado who is a citizen of Colorado for the purpose of determining diversity.

4. Gabrielle E. Milonis is, and has been at all times relevant to the facts alleged in this Complaint, married to Andrew J. Milonis.

5. T.M., A.M., and P.M., are the minor children of Andrew and Gabrielle E. Milonis. All three children are residents of Colorado who are citizens of Colorado for the purpose of determining diversity.

6. Defendant Lampson International, LLC (hereinafter Lampson), is a Washington limited liability company with its business headquarters/principal place of business in the State of Washington, and it is doing business in the State of Wyoming. On information and belief, Lampson is comprised of members who are citizens of Washington such that

Lampson is a citizen of Washington for the purpose of determining diversity. The name and address of its registered agent is William N. Lampson, 607 E. Columbia Drive, Kennewick, Washington 99336.

7. Defendant Earth Work Solutions (WY) (hereinafter EWS) is a Wyoming corporation with its business headquarters/principal place of business in the State of Wyoming, and it is doing business in the State of Wyoming. EWS is a citizen of Wyoming for the purpose of determining diversity. The name and address of its registered agent is Tyler Miller, 2506 Little Powder River Road, Gillette, Wyoming 82716.

8. On information and belief, Defendant Thunder Basin Coal Company, LLC (hereinafter Thunder Basin), is a Delaware limited liability company with its business headquarters/principal place of business in the State of Wyoming, and it is doing business in the State of Wyoming. The name and address of its registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

9. On information and belief, Thunder Basin is a wholly-owned subsidiary of Arch Western Resources, LLC, a Delaware limited liability company. Thus, on information and belief, Thunder Basin is comprised of a single member, Arch Western Resources, LLC.

10. On information and belief, Arch Western Resources, LLC, is comprised of two members: Arch Western Acquisition Corporation, a Delaware corporation that, on information and belief, has its business headquarters/principal place of business in the State of Missouri, with a 95.5 % membership interest in Arch Western Resources, LLC; and BP p.l.c., a

corporation of England and Wales with its business headquarters/principal place of business in England, with a 0.5% membership interest in Arch Western Resources, LLC. On information and belief, Arch Western Acquisition Corporation, in turn, is a wholly-owned subsidiary of Arch Coal, Inc., a Delaware corporation with its principal place of business/business headquarters in Missouri.

11. On information and belief, Thunder Basin through its member and its member's members is a citizen of Delaware, Missouri, and possibly England.

12. On information and belief, no members of Thunder Basin or Arch Western Resources, LLC, reside in Colorado or are citizens of Colorado.

13. On information and belief, Thunder Basin is not a citizen of Colorado for the purpose of determining diversity.

14. Because the Defendants, as legal entities, can act only through their officers, directors, employees, servants and agents, Defendants are independently and directly liable for the negligent acts and omissions of their officers, directors, employees, agents, managerial agents, safety personnel and supervisors who set the policies and procedures, train and supervise employees, authorize the doing and the manner of the acts in question, and who ratified or approved the acts or omissions that directly and proximately caused Andrew J. Milonis' injuries and the resulting damages.

15. Under the doctrine of *respondeat superior*, Defendants are also vicariously liable for any act or omission of an officer, agent, servant or employee made while acting in the scope of authority delegated by the companies, or within the scope of the duties of the

employee, which were the direct and proximate cause of Andrew J. Milonis' injuries and the resulting damages.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the suit is between citizens of different states, and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

17. Pursuant to 28 U.S.C. §1391(a), proper venue for this action is the United States District Court for the District of Wyoming because a substantial part of the events or omissions giving rise to the claims occurred within the District of Wyoming.

18. This Court has general personal jurisdiction over Lampson because it purposefully availed itself of the privileges of conducting business in Wyoming.

19. This Court has specific personal jurisdiction over Lampson because Lampson has purposefully directed its activities at residents of Wyoming, and this action arises out of Lampson's contacts with Wyoming.

20. Lampson has established such contacts with Wyoming through its activities in Wyoming or the consequences of those activities that the maintenance of the suit in Wyoming does not offend traditional notions of fair play and substantial justice.

21. This Court has general personal jurisdiction over Thunder Basin because it purposefully availed itself of the privileges of conducting business in Wyoming.

22. This Court has specific personal jurisdiction over Thunder Basin because Thunder Basin has purposefully directed its activities at residents of Wyoming, and this action arises out of Thunder Basin's contacts with Wyoming.

23. Thunder Basin has established such contacts with Wyoming through its activities in Wyoming or the consequences of those activities that the maintenance of the suit in Wyoming does not offend traditional notions of fair play and substantial justice.

24. This Court has personal jurisdiction over EWS, a Wyoming corporation with its business headquarters/principal place of business in the State of Wyoming.

25. Plaintiff will satisfy Wyoming Statute § 27-14-105 by sending via certified mail, return receipt requested, a copy of this filed Complaint to the Wyoming attorney general and the director of the Wyoming Department of Employment Workers' Safety and Compensation Division.

## STATEMENT OF FACTS

26. On May 31, 2008, Andrew J. Milonis was employed as a millwright helper by TIC-The Industrial Company Wyoming, Inc. (TIC).

27. Thunder Basin operates the Black Thunder Mine located in Campbell County, Wyoming, and initially contracted with TIC to construct a coal handling railway expansion project, known as the Hi-Light Train Load-out facility.

28. TIC contracted with the crane subcontractor, Lampson, which was responsible for planning, monitoring, supervising and conducting the lifting operations in a safe manner.

29. One of the cranes used to construct the Hi-Light Train Load-out facility was a Lampson LTL-1100 Transi-Lift crane, which consisted of two crawler units connected by a 70-foot long stinger, a 100-foot long jib, a 60-foot long jib strut, a 380-foot long main boom, a 150-foot long mast, and a 2,400,000 pound counterweight.

30. Thunder Basin contracted with EWS to perform certain earthwork to prepare the area where the Lampson crane would perform lifting operations.

31. By so contracting with EWS, Thunder Basin removed the associated earthwork from the scope of work to be performed by TIC under TIC's contract with Thunder Basin.

32. Thunder Basin injected itself into the project by contracting, planning, coordinating and/or assigning project-related tasks such that Thunder Basin effectively became the general contractor/construction manager of the overall project.

33. Examples of Thunder Basin's activities as general contractor/construction manager include removing all of the earthwork associated with the crane lifting pad from the scope of the TIC – Thunder Basin contract, and assigning at least a portion of that work to EWS; coordinating and planning with multiple parties, including Lampson, EWS and TIC, to ensure that the railroad activities at the mine were not negatively affected by the construction of the Hi-Light Train Load-out facility; and engaging a geotechnical engineer to determine ground bearing capacity and transmitting that information to Lampson and others.

34. On May 31, 2008, the Lampson crane collapsed while lifting a 280-foot long section of conveyor tubing known as Tube 5. Tube 5 and its associated kicker struts weighed about 463,500 pounds, with the total lift weighing approximately 492,000 pounds.

35. The crane collapsed when it became severely side loaded as a result of an out-of-level foundation condition.

36. Heavy rains in the weeks leading up to the accident and poor drainage in the crane pad area allowed the foundation soils to saturate and then collapse under the high crane load.

37. Also, the wooden mats upon which the crane was operating at the time of the accident were improperly aligned such that they did not effectively distribute the weight of the crane and its load across the lifting area.

38. Another contributing factor is that the wooden mats themselves were to be supported by 12 inches of engineered fill in order to support the crane during its lift of Tube 5, but such fill was not provided and/or was not put in place under the wooden mats.

39. When the crane collapsed, Andrew J. Milonis was struck by falling pendant lines and pendant line connectors from the mast.

40. As a direct and proximate result of the acts and omissions of the Defendants, Andrew J. Milonis sustained serious bodily injuries.

41. Andrew J. Milonis' physical injuries include, but are not limited to, the following:

    a. traumatic brain injury;

    b. multiple skull fractures;

    c. multiple facial fractures, including Le Fort facial fractures, jaw fractures, and orbital fractures;

    d. right shoulder fracture; and

    e. direct left eye trauma.

42. Due to these and other injuries, Andrew J. Milonis spent nearly three weeks at the Wyoming Medical Center in Casper, Wyoming; received treatment at the Elkhorn Valley Rehabilitation Hospital in Casper, Wyoming; spent over two months at the Craig Hospital in Englewood, Colorado; and thereafter underwent a multidisciplinary treatment program at the Centre for Neuro Skills in Bakersfield, California, for over eight months, after which time he moved back to Colorado, where he is continuing to receive medical care.

43. Andrew J. Milonis' other injuries that were directly and proximately caused by the acts and omissions of the Defendants are set forth below in the "Damages" section of this Complaint.

## FIRST CAUSE OF ACTION
## NEGLIGENCE OF LAMPSON

44. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

45. At the time and place of the events described herein, Lampson owed a duty of care to Andrew J. Milonis to avoid causing him injury.

46. At the time and place of the events described herein, Lampson breached the duty of care through, among other things, the following acts and omissions:

   a. Failing to exercise reasonable care under the conditions;

   b. Failing to maintain the crane in a safe operating condition by not preventing the side loading by not sufficiently considering the following:

      i. the collapsible nature of the soils;

      ii. the foundation bearing capacity;

      iii. the uneven ground;

      iv. the concentrated loading due to the vertical joint alignment of the two layers of wooden mates; and

      v. the poor drainage in the crane pad area

   c. failing to provide compaction and quality control criterion for the crane foundation;

   d. failing to ensure that the jib point sheaves and load block were properly reeved to prevent eccentric loading on the jib;

   e. failing to place or to ensure the placement of 12 inches of fill underneath the wooden mats;

   f. failing to meet the standard of care requisite in the industry;

   g. failing to exercise reasonable care in the instruction, training and supervision of Lampson's employees, servants or agents;

   h. failing to provide a safe working environment; and

    i. failing to implement and develop safe work policies and procedures.

47. Such breaches were the direct and proximate cause of the injuries to Andrew J. Milonis described above and the damages more specifically detailed in the "Damages" section of this Complaint.

### SECOND CAUSE OF ACTION
### NEGLIGENCE OF EWS

48. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

49. At the time and place of the events described herein, EWS owed a duty of care to Andrew J. Milonis to avoid causing him injury.

50. At the time and place of the events described herein, EWS breached the duty of care through, among other things, the following acts and omissions:

    a. Failing to exercise reasonable care under the conditions;

    b. Failing to prevent the side loading of the crane by not sufficiently considering the following:

        i. the collapsible nature of the soils;

        ii. the foundation bearing capacity;

        vi. the uneven ground;

        vii. the concentrated loading due to the vertical joint alignment of the two layers of wooden mates; and

        viii. the poor drainage in the crane pad area

   c. failing to provide compaction and quality control criterion for the crane foundation;

   d. failing to place 12 inches of engineered fill underneath the wooden mats;

   e. failing to meet the standard of care requisite in the industry;

   f. failing to exercise reasonable care in the instruction, training and supervision of EWS' employees, servants or agents;

   g. failing to provide a safe working environment; and

   h. failing to implement and develop safe work policies and procedures.

51. Such breaches were the direct and proximate cause of the injuries to Andrew J. Milonis described above and the damages more specifically detailed in the "Damages" section of this Complaint.

### THIRD CAUSE OF ACTION
### NEGLIGENCE OF THUNDER BASIN

52. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

53. At the time and place of the events described herein, Thunder Basin owed a duty of care to Andrew J. Milonis to avoid causing him injury.

54. At the time and place of the events described herein, Thunder Basin breached the duty of care through, among other things. the following acts and omissions:

   a. Failing to exercise reasonable care under the conditions;

    b. Failing to prevent the side loading of the crane by not sufficiently considering the following:

        i. the collapsible nature of the soils;

        ii. the foundation bearing capacity;

        ix. the uneven ground;

        x. the concentrated loading due to the vertical joint alignment of the two layers of wooden mates; and

        xi. the poor drainage in the crane pad area

    c. failing to provide compaction and quality control criterion for the crane foundation;

    d. failing to provide and/or place and/or ensure the placement of 12 inches of fill underneath the wooden mats;

    e. failing to communicate and/or ensure that EWS had necessary information, such as the requirement that 12 inches of fill be placed underneath the wooden mats;

    f. failing to meet the standard of care requisite in the industry;

    g. failing to exercise reasonable care in the performance of its duties as a general contractor/construction manager;

    h. failing to provide a safe working environment; and

    i. failing to implement and develop safe work policies and procedures.

55. Such breaches were the direct and proximate cause of the injuries to Andrew J. Milonis described above and the damages more specifically detailed in the "Damages" section of this Complaint.

## FOURTH CAUSE OF ACTION
## LOSS OF SPOUSAL CONSORTIUM

56. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

57. At the time and place of the events described herein, the Defendants owed a duty of care to Gabrielle E. Milonis to avoid causing her injury.

58. Andrew and Gabrielle E. Milonis are husband and wife.

59. The negligent acts and omissions of the Defendants breached the duty of care they owed Gabrielle E. Milonis.

60. Prior to the injuries sustained by Andrew J. Milonis, he was able to perform his duties as a husband by providing emotional support, physical intimacy and guidance to his wife, Gabrielle E. Milonis, and in providing care, maintenance, and management of their family home.

61. As a direct and proximate result of the Defendants' negligent acts and omissions, Andrew J. Milonis is no longer able to perform his duties as a husband by providing emotional support, physical intimacy and guidance to his wife, Gabrielle E. Milonis, and he is no longer able to provide the care, maintenance, and management of their family home that he previously provided.

62. The nature and character of the relationship between Andrew J. Milonis and Gabrielle E. Milonis changed as a direct and proximate result of the injuries Andrew J. Milonis sustained on May 31, 2008.  As a direct and proximate result thereof, Gabrielle E. Milonis has been deprived of the care, comfort, society, companionship, physical intimacy, physical assistance and consortium of Andrew J. Milonis.

63. As a direct and proximate result of the Defendants' negligent acts and omissions, Gabrielle E. Milonis suffered the damages set forth above and in the "Damages" section of this Complaint.

### FIFTH CAUSE OF ACTION
### LOSS OF PARENTAL CONSORTIUM

64. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

65. At the time and place of the events described herein, the Defendants owed a duty of care to Andrew J. Milonis and his children, T.M., A.M. and P.M. to avoid causing them injury.

66. The negligent acts and omissions of the Defendants breached the duty of care they owed T.M., A.M. and P.M.

67. Due to the injuries sustained by Andrew J. Milonis, he is unable to perform his duties as a father to his children, T.M., A.M. and P.M., including but not limited to parental care, training, companionship, nurturing, guidance, supervision, socialization, and other care, comfort and society.

68. As a direct and proximate result of the negligent acts of the Defendants, T.M., A.M. and P.M. have been and will continue to be deprived of their father's care comfort and society.

69. As a direct and proximate result of the Defendants' negligent acts and omissions, T.M., A.M. and P.M. suffered the damages set forth above and in the "Damages" section of this Complaint.

## DAMAGES

70. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

71. As a direct result of the Defendants' negligent acts and omissions, as set forth in this Complaint, Andrew J. Milonis sustained the following damages for which the Defendants are liable to the Plaintiff:

    a. Past and future physical pain and suffering in an amount to be proven at trial;

    b. Past and future emotional pain and suffering in an amount to be proven at trial;

    c. Past and future loss of enjoyment of life in an amount to be proven at trial;

    d. Past and future loss of wages, income and earning capacity in an amount to be proven at trial;

    e. Other past and future pecuniary loss in an amount to be proven at trial;

    f. Past and future medical and related expenses in an amount to be proven at trial; and

    g. Costs of this action, and any other further relief allowed by law as this Court deems just and proper.

72. As a direct result of the Defendants' negligent acts and omissions, as set forth in this Complaint, Gabrielle E. Milonis sustained the following damages for which the Defendants are liable:

    a. Loss of consortium of her husband, Andrew J. Milonis, in an amount to be proven at trial; and

    b. Costs of this action, and any other further relief allowed by law as this Court deems just and proper.

73. As a direct result of the Defendants' negligent acts and omissions, as set forth in this Complaint, T.M., A.M. and P.M. sustained the following damages for which the Defendants are liable to the Plaintiff:

    a. Loss of consortium of their father, Andrew J. Milonis, in an amount to be proven at trial; and

    b. Costs of this action, and any other relief allowed by law as this Court deems just and proper.

WHEREFORE, Plaintiff prays that the Court enter judgment against the Defendants in an amount supported by the allegations of this Complaint, as follows:

1. Judgment against the Defendants for general damages in an amount consistent with the allegations contained herein and to be proven at trial;

2. Judgment against the Defendants for special damages in an amount consistent with the allegations contained herein and to be proven at trial; and

3. Judgment for costs, interests, and such other and further relief as this Court deems just and equitable.

DATED this 20th day of May, 2011.

Robert A. Krause
Elizabeth A. Richards
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290

Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff, by and through counsel and pursuant to Federal Rule of Civil Procedure 38, hereby requests that this matter be tried to a jury of twelve and submits the requisite fee herewith.

DATED this 20th day of May, 2011.

_____
Robert A. Krause